UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANIS LIVELY,

      Plaintiff,

v.

THE KROGER COMPANY OF
MICHIGAN, a Michigan corporation,

      Defendant.

Case No. 2:19-cv-12961
District Judge Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 26, 27)

I.     Introduction

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 *et seq*. Plaintiff Janis Lively, proceeding *pro se*, is suing defendant, The Kroger Company of Michigan ("Kroger"), alleging religious discrimination and retaliation based on her status as a Jehovah's Witness and her request for time off to attend a three-day annual convention as part of her worship. She also alleges she was constructively discharged. (ECF No. 9). Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 24). Upon review of the parties' papers, the Court deems this matter

1

appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D.

Mich. LR 7.1(f)(2).

Kroger has moved for summary judgment[1] on all claims, and Lively has

moved for summary judgment on her retaliation claim.  (ECF Nos. 26, 27).  For the

reasons that follow, the undersigned recommends that Kroger's motion be granted

and Lively's motion be denied.

## II.     Background

Kroger is an American company that operates grocery and retail stores in

various cities and states throughout the nation, including Store No. 689 located in

Ypsilanti, Michigan.  Lively worked as a cashier at this store from December 3,

2016 until her resignation on March 18, 2019.  (ECF No. 26-3, PageID.359; ECF

No. 26-4).  Lively contends that her resignation was a constructive discharge from

her position due to the religious discrimination she experienced for being a

Jehovah's Witness.  The material facts follow.

The first alleged instance of discrimination occurred when Lively was

denied time off to attend a religious convention from June 29 to July 1, 2018.

(ECF No. 30, PageID.765).  According to Front End Department Head Myron

---

[1] Kroger filed a motion for summary judgment (ECF No. 25) and an amended motion
for summary judgment (ECF No. 26).  In light of the amended motion, the
undersigned recommends that the original motion be denied as moot.  The
undersigned has considered arguments presented in the amended motion.

Covington (who was responsible for scheduling and assigning tasks to cashiers, but was not a manager and did not have authority to discipline employees (ECF No. 26-5, PageID.385)), Lively mentioned the conference in February 2018 but did not give specific dates or make a formal request using eSchedule, Kroger's scheduling software.  (ECF No. 29-2, PageID.693).  Lively admits that she did not use eSchedule to make her request, stating she was never trained how to use it.  (ECF No. 26-3, PageID.354).  But Kroger provided evidence that Lively completed a training module for eSchedule that shows how the software is used to request time off.  (ECF Nos. 26-8, 26-9).  Kroger also submitted an affidavit from associate human relations specialist Denyann M. Holznagle who states that requests for days off *must* be made through eSchedule.  (ECF No. 26-5, PageID.386).  But the employee handbook states only that requests for time off must be made in writing.  (ECF No. 26-7, PageID.403; ECF No. 30, PageID.763).  Lively testified that she had made five written requests for days off for the convention.  (ECF No. 26-3, PageID.362).

On June 26, 2018, that week's schedule was posted, and Lively was scheduled to work June 29 and June 30 from 6:15 p.m. to midnight.  (ECF No. 26-3, PageID.363; ECF No. 26-14, PageID.463).  Lively told Covington that "she was already approved for June 29th and 30th to attend a religious convention," but Covington said everyone had to work that weekend, "no exceptions." (ECF No. 30,

3

PageID.765).  Lively then explained that the law required Kroger to accommodate her religious requirements, but Covington disagreed.  (*Id*.).  Lively then found an employee, Maya Stegell, that was willing to work Lively's June 30 shift, but Covington and a manager told Stegell that she was not a cashier and could not work in place of Lively.  (*Id*.).  Stegell, however, states in an affidavit that she had been working as a cashier for "upwards of [three] months" at that time.  (*Id*.).

Subsequently, on July 19, 2018, Lively received a "Significant Incident Reminder" (SIR) for unexcused leave on June 7, June 29, June 30, and July 16 of that year.  (ECF No. 26-12).  Kroger says that a SIR is not a disciplinary action, but a coaching tool used both to provide positive feedback as well as to assist employees in avoiding future rule infractions.  (ECF No. 26-5, PageID.386).  That said, the SIR given to Lively establishes a "probation period" wherein another related infraction will result in a "Constructive Advice Record," which is not defined.  (ECF No. 26-12).  Lively does not recall whether she was absent on June 7 or July 16.  However, she admits that her unexcused absences on June 29 and 30 were accurate and were the result of her wanting to attend a religious conference. (ECF No. 26-3, PageID.355).  Kroger contends that the religious conference Lively attended on those dates did not actually conflict with her work shifts.  (*Cf.* ECF No. 26-13, 26-14).  The conference brochure shows that the event ended at 4:50 p.m. on those dates.  Lively, however, testified that she was there until "about 6"

4

each day, and her work shifts did not start until 6:15 p.m.  (*Id*.; ECF No. 26-3, PageID.355).

On July 28, 2018, Lively received another SIR, this time for failing to finalize a customer's order and causing the customer to pay for the next person's order as well.  (ECF No. 26-16).  According to Kroger, the customer complained of the overcharge, and after reviewing a tape of the transaction the customer was refunded $165.  (ECF No. 26-5, PageID.387).  Unlike the prior SIR, no probation period was assessed.  (ECF No. 26-16).  Lively contends that she did not fail to finalize the order and rang up the customer properly.  (ECF No. 26-3, PageID.356-59).

On August, 21, 2018, Lively filed an EEOC Charge to the Michigan Department of Civil Rights, alleging religious discrimination for Kroger not allowing her to attend the conference, and retaliation for her attending the conference by issuing the aforementioned SIRs and scrutinizing her adherence to the dress code, which she had not had problems with before.  (ECF No. 26-17; *see also* ECF No. 26-3, PageID.367).

As to retaliation, Lively testified that after the filing of the EEOC charge, Covington yelled at her, criticized the color of her sweater, criticized her work performance in front of others, criticized her for being tardy while she was unable to enter her own hours, and made her clean the cash registers and do "go-backs"

5

more than other employees.  (ECF No. 26-3, PageID.369, 375-79).  A "go-back" is when a cashier returns products that customers have decided not to purchase. (ECF No. 29-2, PageID.692).

On March 18, 2019, Lively was called into assistant store manager Robert Precopio's office to discuss an altercation she experienced with a customer.  Lively had asked that the customer scan her loyalty card herself, to prevent the spread of germs, and the customer became in Lively's words "belligerent."  (ECF No. 26-3, PageID. 371-73).  Precopio told Lively: "Don't let that happen again."  (*Id*., PageID.371).  After a short conversation with Precopio, Lively decided to resign that day.  (*Id*.).  She contends that her experiences of religious discrimination and retaliation, including her treatment on March 18, 2019, constituted a constructive discharge.

As noted above, Kroger now moves for summary judgment on all of Lively's claims, arguing that she has not suffered an adverse employment action required to show discrimination, refusal to accommodate, or retaliation, and that there is no nexus between her EEOC Charge and the allegedly retaliatory acts of which she complains.  (ECF No. 26).  Lively also moves for summary judgment on her claim of retaliation.  (ECF No. 27).

### III.    Summary Judgment

6

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists...."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  If a moving party fails to meet this initial burden, the non-moving party has no duty to present countervailing evidence; indeed, a court abuses its discretion if it grants a summary judgment motion where the moving party has not met its burden.  *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 726 (6th Cir. 2000).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446,

453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must ... do more than simply show that there is some metaphysical doubt as to the material facts[.] ... [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] ..." *Stansberry*, 651 F.3d at 486 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Lively is *pro se* does not reduce her obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage,

8

... 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

IV.    Analysis

A.  Religious Discrimination

1.  General

To assert a successful claim of religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Lively must present direct evidence of discrimination or, in the absence of direct evidence, a prima facie case of indirect discrimination by showing (1) that she was a member of a protected class, (2) that she experienced a materially adverse employment action, (3) that she was qualified for the position, and (4) that she was replaced by a person outside of

9

the protected class or that she was treated differently than similarly situated employees. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

If Lively is able to present a prima facie case, the burden shifts to Kroger to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Kroger meets this burden, then the burden shifts back to Lively who must show that Kroger's proffered reason is a pretext for discrimination. *Id*. at 804.

"Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

## 2. Application

Lively has not presented direct evidence of religious discrimination. "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)). Such evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* Lively has

presented no such evidence, and thus has the burden of showing indirect discrimination.

Kroger appears to concede that the first and third prongs of the prima facie test are met, at least for the purposes of their motion, arguing only that Lively has not suffered a materially adverse employment action and that she was not treated differently than any similarly situated employee.  Kroger also contends that the employment actions alleged by Lively were made for legitimate, non-discriminatory reasons, and that these reasons were not a pretext for discrimination, noting that if an employer honestly believes in the reasons proffered, "the employee cannot establish pretext even if the employer's reason[s are] ultimately found to be mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

To satisfy the second prong of the prima facie test, an employee must experience a "materially adverse" employment action. *Ford v. Gen. Motors Co.*, 305 F.3d 545, 553 (6th Cir. 2002); *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999).  Under Sixth Circuit precedent:

> [a] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (citations omitted). One must demonstrate the existence of a " 'materially adverse' change in the terms or conditions of employment because of the employer's actions." *Allen,* 165 F.3d at 410 (citation omitted).

Lively has alleged many inconveniences, as summarized above, including extra criticism from coworkers and alterations to her job responsibilities with additional required register-cleaning duties and "go-backs." None of these allegations, though supported by evidence, rise to the level of materiality required under the test. She was not demoted, did not suffer a loss of wages, salary, or benefits, and was not demoted. There is no evidence of a unique materially adverse action for the Court to consider. However, the July 19, 2018 SIR that Lively received, in part for her absences to attend the religious conference, must be considered because despite testimony that an SIR is not a disciplinary action, it contained a 90-day probationary period as described above.

The Sixth Circuit has not explicitly addressed whether probation is, or can be, an adverse employment action in the context of discrimination. *Amos v. McNairy Cty.*, 622 F. App'x 529, 534 n.3 (6th Cir. 2015); *see also Saulsberry v. Fed. Exp. Corp.*, 552 F. App'x 424, 430 (6th Cir. 2014) ("We need not address whether Saulsberry's probation constituted an adverse employment action because he cannot prove that he was treated differently than similarly situated non-

protected employees."). That said, many district courts within the Circuit have found that being placed on probation, without more, does not constitute an adverse employment action. *Amos v. McNairy Cty., Tenn.*, 997 F. Supp. 2d 889, 902 (W.D. Tenn.), *aff'd sub nom. Amos v. McNairy Cty.* (collecting cases); *cf. Alexander v. Univ. of Ky.,* 2012 WL 1068764, at *12 (E.D. Ky. Mar. 28, 2012) (imposition of probation constituted adverse employment action where coupled with loss of benefits). Moreover, the Sixth Circuit has found that placement on a performance improvement plan and non-satisfactory work reviews, absent some loss in salary, title, or benefits, did not rise to the level of a materially adverse employment action. *Choulagh v. Holder,* 528 F. App'x 432, 438 (6th Cir. 2013); *see also Epps v. FedEx Servs.*, 438 F. App'x 455, 458 (6th Cir. 2011) (negative mid-year review did not result in a change in position or loss of pay and was therefore not an adverse employment action) and *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322–23 (6th Cir. 2007) (where an unfavorable job performance appraisal "likely" resulted in a transfer and later termination, determination of adverse employment action was for the jury to decide). A negative performance evaluation can only be considered an adverse employment action where the plaintiff can "point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (internal quotation omitted).

13

Based on the foregoing guidance, the Court concludes that the July 19, 2018 SIR does not constitute a materially adverse employment action. Lively has also failed to provide sufficient evidence that she was treated differently than similarly situated employees. In fact, she admits that Covington yelled at all of the employees, and that a similarly situated Muslim coworker had her leave request for a religious holiday denied. (ECF No. 26-3, PageID.368, 379). As such, Lively has failed to establish a prima facie case of religious discrimination. Given this determination, it is not necessary to address whether Kroger articulated a legitimate reason for its actions or whether Lively can show Kroger's actions were a pretext for religious discrimination. Overall, Kroger is entitled to summary judgment on Lively's religious discrimination claim.

## B. Constructive Discharge

The next issue is whether Lively was constructively discharged from her employment on March 18, 2019 when she resigned from her position, as Lively contends. "To demonstrate a constructive discharge, the plaintiff must show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." *Hurtt v. Int'l Services, Inc.*, 627 F.App'x 414, 420 (6th Cir. 2015) (citation omitted). It is undisputed that

14

Lively resigned, satisfying the third prong.  Thus, the court considers whether

Lively has established the first two prongs of constructive discharge.

The Sixth Circuit has adopted the following approach to consideration of the

first prong:

> Whether a reasonable person would have feel compelled to resign
> depends on the facts of each case, but we consider the following factors
> relevant, singly or in combination: (1) demotion; (2) reduction in salary;
> (3) reduction in job responsibilities; (4) reassignment to menial or
> degrading work; (5) reassignment to work under a younger supervisor;
> (6) badgering, harassment, or humiliation by the employer calculated
> to encourage the employee's resignation; or (7) offers of early
> retirement or continued employment on terms less favorable than the
> employee's former status.

*Laster*, 746 F.3d at 728.  Though the standard for this prong differs from that

required to show a materially adverse employment action, the same instances are

considered here, and they fail to rise to the level of a constructive discharge.

Lively was not demoted and did not suffer a reduction in wages or salary.  Her

treatment by Covington was not calculated to encourage her resignation.  *See* ECF

No. 26-3, PageID.368 ("[Covington yelled at] all the kids … He treated them

horribly.  [But not me,] because I guess I talked back.").  Lively testified that her

additional "go-back" and register cleaning duties were "kind of fine," and were not

consistently compulsory, as she was later taken off of go-back duty and was only

asked, not ordered, to clean additional registers.  (*Id*., PageID.377).  Further, these

were not changes in her job responsibilities.  *See* ECF No. 29-2, PageID.692

(Declaration of Myron Covington) ("Cashier tasks include the cleaning of registers, making sure that UScan stations are properly supplied with bags and returning products that customers have decided not to purchase ("go backs.")." "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Smith v. Henderson,* 376 F.3d 529, 534 (6th Cir. 2004). Based on this record, Lively has failed to establish a genuine issue of material fact as to whether her working conditions were so intolerable to a reasonable person. Rather, the record shows they did not rise to such a level. Furthermore, Lively has not presented any evidence that this behavior was undertaken with the specific intention of forcing her to quit as required by the second prong of a prima facie case.

Thus, the Court concludes that Lively has not presented sufficient evidence to create a genuine issue of material fact as to whether she suffered a constructive discharge. The record shows that she did not. Accordingly, Kroger is entitled to summary judgment on Lively's constructive discharge claim.

### C. Reasonable Accommodation

#### 1. General

Title VII makes in unlawful to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e–2(a). The Act broadly defines "religion" to mean

16

"all aspects of religious observance and practice, as well as belief." § 2000e–2(j). "The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir. 1987), *cert. denied,* 485 U.S. 989 (1988). In order to establish a prima facie case in this context, a plaintiff must show that (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she has informed the employer about the conflicts; and (3) she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007); *Hall v. Baptist Mem'l Health Care Corp.,* 215 F.3d 618, 627–28 (6th Cir. 2000).

Once an employee has established a prima facie case, the burden shifts to the employer "to show that it could not reasonably accommodate the employee without undue hardship." *Virts v. Consol. Freightways Corp.,* 285 F.3d 508, 516 (6th Cir. 2002) (citations omitted). For purposes of a religious accommodation, "[t]o require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship." *Cooper v. Oak Rubber Co.,* 15 F.3d 1375, 1378 (6th Cir. 1994) (citing *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84 (1977)). "In cases in which seniority-based systems allegedly prevent religious accommodation, courts have held that the

17

employer is not required to violate a collective bargaining agreement to accommodate the employee." *Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati,* 88 F. App'x 813, 819 (6th Cir. 2003) (citing *Hardison,* 432 U.S. at 84; *Virts,* 285 F.3d at 518–19).

Unlike Title VII, the ELCRA does not include an affirmative duty to accommodate an employee's religious beliefs. *Ureche v. Home Depot U.S.A., Inc.*, No. 2:06CV11017, 2006 WL 3825070, at *4 (E.D. Mich. Dec. 26, 2006); *Wessling v. Kroger Co.,* 554 F. Supp. 548, 552 (E.D. Mich. 1982).

## 2. Application

Kroger concedes, for the purposes of their motion, that Lively has a sincerely held religious belief that required her to attend the convention in question. (ECF No. 26, PageID.337).  Kroger does not concede that this belief required her to miss the work shifts that she requested off, as they did not conflict with the time that the convention was held each day. (*Id*.; c*f.* ECF No. 26-13 (conference brochure), ECF No. 26-14 (Lively's posted work schedule for June 29 and 30)).  Though the conference brochure shows that the event ended at 4:50 p.m. on those dates, Lively testified that she was there until "about 6" each day, conflicting with her start time of 6:15 p.m., after travel time was factored in (*Id*.; ECF No. 26-3, PageID.355).

18

Kroger also contends that Lively was not discharged or disciplined for taking the time off without approval. As discussed above, Lively received a SIR for the unexcused leave, containing therein a probationary period of ninety days. Citing cases from outside of this jurisdiction, Kroger maintains that receiving warnings due to attendance issues does not satisfy the "discharge or discipline" prong of the test. *See Horsey v. ADT LLC*, No. 5:17-CV-1356, 2020 WL 554390, at *10 (N.D.N.Y., Feb. 4, 2020), *Guy v. New York City Transit*, No. 10 CV 1998, 2012 WL 4472112, at *7 (E.D.N.Y., Aug. 6, 2012). These cases do not necessarily reflect the state of the law in the Sixth Circuit, nor do they address whether a probationary period can constitute discipline under the test.

The answer is not entirely clear whether the warning or probation that Lively received satisfies the discharge or discipline test. In *Jackson v. Longistics Transp., Inc.*, No. 11-2093-STA, 2012 WL 1252543, at *10 (W.D. Tenn. Apr. 13, 2012), the court found that a written reprimand stating, "another refusal in a 12 month period will result in your termination of employment," satisfied the discharge requirement. In doing so, the court relied on the Sixth Circuit's ruling in *Cooper v. Oak Rubber Co.*, in which a verbal warning and employee's accumulation of "absence points" amounted to discipline under this standard. 15 F.3d 1375 at 1379. But those facts were not discussed at length in *Cooper*, as the court found there was "no dispute" that the plaintiff was disciplined. *Id.*, n.1. Therefore, it is

19

unclear whether *Cooper* can stand for the proposition that a warning and "points" toward a future disciplinary action can satisfy the "discipline or discharge" prong. And to further distinguish *Jackson*, the Court must note that the threat of discipline for a subsequent violation was rather harsh: termination. Here, a violation during the probationary period results in a "Constructive Advice Record," which presumably does not result in termination.

A slightly clearer Sixth Circuit statement on the issue can be found in *Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 569 F.3d 576, 581 (6th Cir. 2009). In *Reed*, the plaintiff held a religious objection to paying his union dues. *Id*. at 578. The union's accommodation for his objection was to allow him make full payment to charity instead. *Id*. But because the plaintiff had been making a smaller payment to the union as an objecting non-member, this later accommodation caused him to pay more than he was previously paying. *Id*. The Sixth Circuit was presented with the question of whether this penalty, caused not by plaintiff's employer but by his union, could constitute a discipline under the second prong of the prima facie test. However, the court declined to address the question, finding that because the slight increase in dues did not rise to the standard of a materially adverse employment action, it could not be a form of "discharge or discipline." *Id*. at 581. As at least one other court has reasoned, this means that the concept of "discharge or discipline" is narrower than

20

the concept of "adverse employment action."  *McCray v. Fed. Express Corp.*, No. 2:17-CV-2918-JPM-CGC, 2020 WL 4676384, at *11 (W.D. Tenn. Aug. 12, 2020). Stated differently, activity that does not rise to the level of an adverse employment action cannot rise to the level of discharge or discipline.

Here, based on the above precedents, Lively has not meet the "discharge or discipline" requirement based on receiving the SIR.  Moreover, while Lively could potentially satisfy the "discharge or discipline" requirement by showing that she was constructively discharged, as explained above, the actions she has shown prior to her resignation do not amount to a constructive discharge.  As with her religious discrimination claim, Lively has not made out a prima facie case as required for her religious accommodation claim.

### D.  Retaliation

#### 1.  General

Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014), citing 42 U.S.C. § 2000e–3(a).  It "protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices."  *Id*. at 730.  As with a Title VII discrimination claim, a Title VII retaliation claim can be established "either by introducing direct evidence

of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 538 (6th Cir. 2008). And as with Lively's discrimination claim, she opts here for the latter.

To support a claim of retaliation without direct evidence, Lively must first establish a prima facie case for retaliation. To do so, she "must demonstrate that: (1) [s]he engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster* 746 F.3d at 730 (citations omitted). Her claim "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

If Lively succeeds in making out the elements of a prima facie case of retaliation, the burden of production shifts to Kroger to articulate a legitimate, non-retaliatory reason for the termination. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019) (citations omitted). If Kroger satisfies its burden of production, the burden shifts back to Lively to show that the reason was a pretext

22

for retaliation.  *Id*. at 614.  "The analysis of a retaliation claim brought under the ELCRA is identical to the Title VII analysis."  *Id*. (internal quotation omitted).

## 2.  Application

Lively testified at deposition that she suffered retaliation for the filing of her first EEOC Charge in August 2018:

> COUNSEL:  All right.  But why would they want to write you up for that if they didn't believe that you did something wrong?
>
> LIVELY:  Retaliation.  That's why.
>
> COUNSEL:  Okay.  Let's explore that.  They would retaliate against you.  Why would they retaliate against you?  Because you wanted two days off?
>
> LIVELY:  No, not because I wanted two days off.  Because I went to the EEOC.

(ECF No. 26-3, PageID.366).  Lively further testified that Covington retaliated against her by criticizing her work and knowledge in front of others, criticizing her dress, accusing her of not having clean registers or having bags ready at the registers, and showing her how to operate certain software in front of others.  (*Id*., PageID.369, 378).  She also testified that the SIR she received on July 28, 2018 from assistant store manager Michael Wilcox was retaliatory.  (*Id*., PageID.366). But this occurred before the EEOC Charge, and she later testified that Wilcox did not retaliate.  (*Id*., PageID.379). Thus, the Court considers only whether

23

Covington's actions rise to the level a materially adverse action and whether there is a causal connection between the adverse action and the protected activity.

Under Title VII, Lively's burden of establishing a materially adverse action is less onerous than that of establishing an adverse employment action in her discrimination claim. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007) (citations omitted). In the retaliation context, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation omitted). "For example, even the failure to extend an invitation to an employee for lunch could constitute a materially adverse action in a certain context, such as career advancement." *Lyons v. Michigan Dep't of Corr.*, No. 16-14420, 2019 WL 1002490, at *4 (E.D. Mich. Mar. 1, 2019), *aff'd*, 812 F. App'x 305 (6th Cir. 2020) (citing *Laster*, 746 F.3d at 732).[2]

---

[2] Under the ELCRA, the adverse employment action requirement is similarly stringent to those discussed in the Religious Discrimination and Reasonable Accommodation sections. *See Shaya v. Belcastro*, No. CV 14-11112, 2016 WL 3353961, at *10 (E.D. Mich. June 10, 2016); *Pena v. Ingham Cty. Rd. Comm'n*, 255 Mich. App. 299, 310-12 (2003); *Chen v. Wayne State Univ.*, 284 Mich. App. 172, 201–02, 771 N.W.2d 820, 839 (2009). The Court thus finds that Lively has not shown an adverse employment action for retaliation under ELCRA for the same reasons.

Unlike her previously considered claims, Lively has met her burden on this

prong of her retaliation claim. Lively has credibly testified to having been

assigned more of the less desirable job duties for her position after filing the EEOC

Charge, which in this context is materially adverse.

> Almost every job category involves some responsibilities and duties
> that are less desirable than others. Common sense suggests that one
> good way to discourage an employee such as [Lively] from bringing
> discrimination charges would be to insist that she spend more time
> performing the more arduous duties and less time performing those that
> are easier or more agreeable. That is presumably why the EEOC has
> consistently found '[r]etaliatory work assignments' to be a classic and
> 'widely recognized' example of 'forbidden retaliation.'

*Burlington*, 548 U.S. at 68 (citing various EEOC materials). Covington's

treatment of Lively also meets the low bar for adverse employment actions in the

context of retaliation.

However, Lively must also show a causal connection between the protected

activity and Kroger's actions. She has failed to do so. The Supreme Court has

made clear that Title VII retaliation claims require traditional but-for causation,

wherein a plaintiff must show " 'that the harm would not have occurred' in the

absence of—that is, but for—the defendant's conduct." *Univ. of Tex. Sw. Med.*

*Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013) (quoting Restatement of Torts § 431,

Comment *a* (negligence)). Thus, a defendant will be entitled to summary

judgment "[s]o long as [nondiscriminatory] factors were sufficient to justify [its]

ultimate decision." *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir. 2014).

The Sixth Circuit has held that temporal proximity alone may be sufficient to establish causality:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 895 (6th Cir. 2008) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

Kroger cites *Arendale v. City of Memphis* for the proposition that, "[w]hile temporal proximity between an assertion of Title VII rights and an adverse employment action provides highly probative evidence of a causal connection, 'temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.' " 519 F.3d 587, 606 (6th Cir. 2008) (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)). But as explained by the Sixth Circuit in *Mickey*, the court in *Nguyen* did not specifically foreclose the possibility of temporal proximity alone establishing a causal connection, nor did the cases cited therein. 516 F.3d at 523-24. Kroger also cites cases showing that three month and four month gaps, respectively, between

the protected activity and the alleged retaliation negated findings of a causal

connection. *Tabura v. Kellogg USA, Inc.*, 194 F. Supp. 3d 1188 (D. Utah 2016);

*Sanford v. Walmart, Inc.*, No. 1:13-CV-174, 2016 WL 5662029 (M.D. Ga., Sept.

29, 2016). These cases are from outside of the Sixth Circuit and therefore are of

limited value.

In this Circuit, courts have found that a four month gap between a plaintiff's

protected activity and their discharge is insufficient to support an inference

of retaliation. *Cooper v. City of N. Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986).

But a gap of "just over three months" between protected activity and discharge was

enough to create such an inference. *Singfield v. Akron Metro. Hous. Auth.*, 389

F.3d 555, 563 (6th Cir. 2004). Another Sixth Circuit case, *Tuttle v. Metro. Gov't*

*of Nashville*, held that while a temporal proximity of less than three months was

not enough to establish a causal connection, coupling that with a perceived threat

from a human resource manager days after the protected activity was sufficient due

to the proximity of all three events. 474 F.3d 307, 320–21 (6th Cir. 2007). Other

evidence that can lead to an inference of retaliation includes different treatment

than other employees, more frequent disciplinary write ups for trivial matters, and

unwarranted criticism of the plaintiff's work. *Moore v. KUKA Welding Sys. &*

*Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). But if the adverse employment

action has a legitimate intervening cause or an "obviously nonretaliatory basis,"

the inference of retaliation is dispelled. *Wasek v. Arrow Energy Servs., Inc.*, 682

F.3d 463, 472 (6th Cir. 2012) (quoting *Vereecke v. Huron Valley Sch. Dist.,* 609

F.3d 392, 401 (6th Cir. 2010)).

The SIRs that Lively received for her absences and for failing to close out a

customer's purchase cannot be considered retaliatory, as they occurred before

Lively's protected conduct, the filing of the EEOC Charge in August 2018.

Moreover, each SIR is supported by an intervening cause: unexcused absences and

a customer's complaint.  And regarding her requested leave and subsequent SIR,

Lively admits that a similarly situated Muslim coworker also had her leave request

for a religious holiday denied.  (ECF No. 26-3, PageID.379).  Thus, Lively has

failed to show a causal connection between the SIRs and Lively's protected

activity.

The Court is left to consider whether Covington's actions toward Lively

have a causal connection to the EEOC Charge.  Lively argues that temporal

proximity of the actions to the protected conduct is enough to infer a retaliatory

motive.  However, she has not met her burden to show when the allegedly

retaliatory conduct began.  (ECF No. 30, PageID.741).  It is not clear from her

deposition when the conduct began, and whether it began before or after the

protected conduct.  (ECF No. 26-3).   Furthermore, to show retaliatory conduct by

a coworker, Lively must also show that "supervisors or members of management

have actual or constructive knowledge of the coworker's retaliatory behavior" and that they "have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." *Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 346 (6th Cir. 2008).  Lively has not put forth sufficient evidence to show that supervisors or management knew of or condoned his conduct.  To the contrary, when assistant store manager Precopio learned of Lively's additional assigned tasks, he questioned the reassignment and had her put back on register duty.  (ECF No. 26-3, PageID.379).  Thus, Covington's allegedly retaliatory conduct cannot be imputed to Kroger.

Though Lively testified that Precopio did not retaliate against her, (*Id*.), the Court will also consider whether his verbal admonishment on Lively's date of resignation could constitute retaliation.  The Court concludes that it could not.  Precopio's warning came over six months after Lively filed her EEOC Charge.  It was based on a legitimate intervening complaint from a customer.  And there is no evidence submitted to link the action, or Precopio or other management figures, to the protected conduct.

Overall, Lively has failed to put forth evidence to establish that she is entitled to summary judgment on her retaliation claim.  Kroger, on the other hand, has met its burden that Lively cannot prevail as a matter of law on a claim of

retaliation.  Kroger is therefore entitled to summary judgment on Lively's retaliation claim.

## V.    Conclusion

Accordingly, for the reasons stated above, the undersigned recommends that Kroger's amended motion for summary judgment (ECF No. 26) be **GRANTED**, and that Lively's motion for summary judgment (ECF No. 27) be **DENIED**.

Dated: November 20, 2020                           s/Kimberly G. Altman
Detroit, Michigan                                          KIMBERLY G. ALTMAN
                                                                   United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 20, 2020.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager