UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANIS LIVELY,

    Plaintiff,

v.

THE KROGER COMPANY OF
MICHIGAN, a Michigan Corporation,

    Defendant.

Case No. 19-12961
Honorable Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

**ORDER ADOPTING REPORT AND RECOMMENDATION [35],
DENYING AS MOOT KROGER'S FIRST MOTION FOR SUMMARY JUDGMENT
[25], GRANTING KROGER'S AMENDED MOTION FOR SUMMARYJUDGMENT
[26], AND DENYING LIVELY'S MOTION FOR SUMMARY JUDGMENT [27]**

Janis Lively alleges that her former employer Kroger discriminated against her for practicing her faith as a Jehovah's Witness when Kroger failed to grant her time off to attend a religious conference. Kroger responds that the conference did not conflict with her work schedule and that Lively ultimately quit the job by choice.

Kroger and Lively have both moved for summary judgment. Magistrate Judge Kimberly G. Altman has issued a report and recommendation that the Court dismiss Kroger's initial motion for summary judgment as moot in light of its amended motion, grant Kroger's amended motion for summary judgment, and deny Lively's motion for summary judgment. (ECF No. 35.) Lively filed timely objections. (ECF No. 36.) For the reasons given below, the Court overrules Lively's objections and adopts the report and recommendation.

## I. Background

Plaintiff Janis Lively, proceeding pro se, filed this action against the Kroger Company alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 *et seq.* Lively worked as a cashier at the grocery store from December 3, 2016 until she resigned on March 18, 2019. (ECF No. 26-3, PageID.359; ECF No. 26-4.) Lively alleges religious discrimination, failure to accommodate, retaliation, and constructive discharge by Kroger based on her protected status as a Jehovah's Witness and her request for time off to attend a three-day convention as part of her religious practice. (ECF No. 9.) This Court referred all pretrial motions in this matter to Magistrate Judge Altman pursuant to 28 U.S.C. § 636(b)(1). (ECF No. 24.)

Kroger moved for summary judgment on all claims (ECF No. 25) and then filed an amended motion for summary judgment (ECF No. 26). Lively filed a cross-motion, seeking summary judgment on her retaliation claim. (ECF No. 27.)

In her detailed and carefully reasoned report and recommendation, Magistrate Judge Altman recommends that the Court grant Kroger's amended motion for summary judgment, dismiss Kroger's original motion as moot, and deny Lively's motion for summary judgment. (ECF No. 35.) Lively filed objections pursuant to Federal Rule of Civil Procedure 72(b). (ECF No. 36.) The parties have provided substantial briefing that enables resolution of the motion without the need for further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standards

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the

2

district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Under the familiar standard of review, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court "does not sit as a trier of fact." *Med. Inst. Of Minn. v. Nat'l Ass'n of Trade & Technical Schs.*, 817 F.2d 1310, 1315 (8th Cir. 1987). Rule 56 does not permit the Court to assess credibility or "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). Rather, the Court's task is to "determine whether there is a genuine issue for trial." *Id.* A genuine, triable issue exists if, given the facts in the record, a reasonable factfinder could return a verdict for either party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although Lively is proceeding pro se, the liberal pleading standard for pro se parties is "inapplicable" "once a case has progressed to the summary judgment stage." *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Accordingly, even pro se parties cannot oppose summary judgment through mere allegations and unsworn filings; a response must set out specific facts showing a genuine issue for trial through affidavits or otherwise. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

### III.  Kroger's Original Motion for Summary Judgment Is Moot

As a preliminary matter, Lively does not object to the recommendation to dismiss Kroger's first motion for summary judgment (ECF No. 25) as moot in light of its amended motion (ECF

3

No. 26). (*See* ECF No. 35, PageID.1111; ECF No. 36.) The Court agrees and therefore DISMISSES AS MOOT Kroger's initial motion for summary judgment. (ECF No. 25.) With that, the Court proceeds to the merits of the two live motions.

## IV. Lively's Objections

Lively raises objections to the report and recommendation for all of her claims. (ECF No. 36.) The Court therefore addresses all four causes of action.

### A. Religious Discrimination

Lively objects to the finding that she failed to establish a prima facie case of religious discrimination. (ECF No. 36, PageID.1141.)

To establish religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Lively must present direct evidence of discrimination or, in the absence of direct evidence, make out a prima facie case of discrimination based on indirect evidence by showing (1) that she was a member of a protected class, (2) that she was qualified for the position, (3) that she experienced a materially adverse employment action, and (4) that she was replaced by a person outside of the protected class or that she was treated differently than similarly situated employees. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Lively established a prima facie case, the burden would shift to Kroger to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Kroger meets this burden, then the burden shifts back to Lively who must show that Kroger's proffered reason is a pretext for discrimination. *Id.* at 804. Lively's ELCRA claim is "analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

4

The Magistrate Judge found that Lively has not presented direct evidence of religious discrimination. Direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." (ECF No. 35, PageID.1119 (citing *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003) (citation omitted)). Lively does not dispute that finding in her objections, *see* ECF No. 36, so the Court considers whether she has presented a prima facie case of discrimination based on indirect evidence instead.

Neither Kroger nor Lively contest the first or second elements to show a prima facie case of religious discrimination: that Lively was a member of a protected class and she was qualified for the job. But the Magistrate Judge found that Lively had not shown the third and fourth requirements: that she experienced a materially adverse employment action and was treated differently than a similarly situated employee. (*Id.* at PageID.1120–1123.) Lively's objections on this claim all pertain to whether she was subject to a materially adverse action. (ECF No. 36, PageID.1141–1149.)

In the Sixth Circuit, a materially adverse action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007).

The record indicates that the most consequential actions taken by Kroger during Lively's employment were the Significant Incident Reminders ("SIRs") issued to Lively on two occasions. Kroger describes an SIR as a "coaching tool" rather than a disciplinary action, but some SIRs do come with a 90-day probationary period. (ECF No. 26-5, PageID.386). The SIR itself states: "A

5

significant incident can be an example of good performance or a mistake or a failure of some kind. Both should be noted and reviewed with the employee." (*Id.*)

Lively received the first SIR on July 19, 2018, for four unexcused absences, two of which were on the dates of the Jehovah's Witness conference. (ECF No. 26-12, PageID.459). That SIR came with a 90-day probationary period. Another unexcused absence during the probationary period would result in a "Constructive Advice Record," which Kroger does not define. (ECF No. 26-12, PageID.459.) But the record indicates that an infraction during the SIR probationary period would not result in termination. (*See id.*) Lively received a second SIR on July 28, 2018 for failing to finalize a customer's order, causing the subsequent customer to pay for both. (ECF No. 26-5, PageID.387; ECF No. 26-16, PageID.467). "No discipline was issued" for the July 28th incident and she was not placed on a probationary term. (ECF No. 26-5, PageID.387.)

The Magistrate Judge found that in Lively's case, only the first SIR, which came with the probationary period, potentially rose to the level of a "materially adverse action" for purposes of a religious discrimination claim. (ECF No. 35, PageID.1121.) The Magistrate Judge found that Lively's other complaints—the inconvenience of "extra criticism from coworkers and alterations to her job responsibilities," such as register cleaning and returning unwanted products to display shelves—did not show a materially adverse employment event. (*Id.*) But the Magistrate Judge ultimately concluded that the SIR and the probationary period was not a materially adverse action according to the Sixth Circuit's guidance because they did not result in a "change in position" and were unaccompanied by, for example, a loss in salary, title, or benefits. (*Id*. (citations omitted).)

Lively's objections largely re-argue her summary judgment motion. But she makes three specific objections that the Court will address.

6

First, Lively challenges the version of the July 28, 2018 Significant Incident Reminder (SIR) in the record. She says that the report and recommendation relied on an altered version of the SIR (also called a "write-up" or "tape"). (ECF No. 36, PageID.1142–1143 n.1.) Lively says that at the time of the incident, she received an SIR from her manager, Mr. Wilcox, with his handwritten notes on it, but the SIR produced and filed by Kroger does not have the handwritten notes. (*Id.*) She does not explain why this difference should change the outcome of summary judgment.

Second, Lively argues that the unexcused absences were pretextual and entirely fabricated. (ECF No. 36, PageID.1145.) She attaches an untitled spreadsheet, which appears to be a printout of a timesheet from Kroger, as evidence that her absence on June 7th was an excused vacation day and that she in fact worked on July 16th. (ECF No. 36, PageID.1172 ("Exhibit 4").). This document was not included in the record with either party's motion for summary judgment. (*See* ECF No. 26, 27.) Even if the Court were to permit Lively to attach new evidence to her objections, the timesheets do not prove her factual claim. The dates on the timesheet do not include June 7th or July 16th. (ECF No. 36, PageID.1172.) If anything, the timesheet would support the finding that Lively did not work on those days and there was no explanation for her absence. And there is no other evidence in the record to counter Kroger's evidence that Lively missed four days of work without permission. So Lively's objection and attempt to raise new evidence do not alter the factual findings in the report and recommendation.

Third, Lively appears to argue that all of the negative experiences she alleged while working at Kroger should be recognized as materially adverse actions, including negative reports in her personnel files, "humiliating instances" of her manger intervening while Lively was ringing up a customer, cleaning duties, restocking duties, criticism about her clothing, "fabricated"

7

allegations of unexcused absences, and the 90-day probationary period. (ECF No. 36, PageID.1148.) But the Magistrate Judge was correct that none of these experiences approach a "change in employment status" or "significant change in responsibilities" that characterize a materially adverse employment action. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) ("An adverse employment action is an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998))).

And most importantly for this case, to show that a negative performance review constitutes an adverse employment action, "the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000)). For example, evidence that an employee "did not receive as [] high of a pay increase" would be a tangible consequence. *Id.* Lively does not make that showing here. None of her other evidence—e.g., more cleaning duties, more "go backs" to restock shelves, or more criticism from her coworkers—are sufficient to be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Michael*, 496 F.3d at 594. This is entirely consistent with the general rule in this circuit that negative performance reviews are not materially adverse actions under Title VII. *See, e.g.*, *Agnew v. BASF Corp.,* 286 F.3d 307 (6th Cir. 2002) (holding that an employer's requirement that an employee comply with a "performance improvement plan" or face disciplinary action did not constitute adverse employment action); *Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 895 (S.D. Ohio 2010) (holding

8

that "poor evaluations and [performance improvement plans] do not constitute materially adverse actions within the context of Title VII").

Lively's objection therefore presents no evidence or case law to dispute the Magistrate Judge's conclusion that Lively was not subject to a materially adverse employment action. The Court agrees and adopts the report's finding that Lively has failed to present direct evidence or establish a prima facie case of religious discrimination based on indirect evidence under Title VII.

### B. Reasonable Accommodation

Lively also objects to the recommendation that Kroger is entitled to summary judgment on her claim for reasonable accommodation based on her religion.

To the extent that Lively asserts a reasonable accommodation claim under Michigan law, that claim is barred as a matter of law. "ELCRA does not include an affirmative duty to accommodate an employee's religious beliefs." *Ureche v. Home Depot U.S.A., Inc.*, No. 2:06CV11017, 2006 WL 3825070, at *4 (E.D. Mich. Dec. 26, 2006); *see also Smith v. Northstar Dining Chesterfield, LLC*, No. 12-14311, 2014 WL 4829591, at *10 (E.D. Mich. Sept. 29, 2014).

And the undisputed evidence in the record shows that a reasonable jury could not find for Lively on her federal claim based on a failure to provide a reasonable accommodation. Title VII imposes a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977) (citing 42 U.S.C. § 2000e(j)). "The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009) (citations omitted). To establish a prima facie case of religious discrimination for a reasonable accommodation claim, a plaintiff must

9

show that "(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2) [s]he has informed the employer about the conflict; and (3) [s]he was discharged or disciplined for failing to comply with the conflicting employment requirement.'" *Id.* (quoting *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002)). Once an employee has established a prima facie case, the employer has the burden "to show that it could not reasonably accommodate the employee without undue hardship." *Id.*

The Magistrate Judge found Lively did not establish a prima facie reasonable accommodation claim, reasoning that the SIR and probationary period did not rise to the level of "discharge or discipline" for failure to comply with a conflicting employment requirement. (ECF No. 35, PageID.1129–1130 (citing *McCray v. Fed. Express Corp.*, No. 2:17-CV-2918, 2020 WL 4676384, at *11 (W.D. Tenn. Aug. 12, 2020) (explaining that the concept of "discharge or discipline" is narrower than the concept of "adverse employment action.")).) The Magistrate Judge also noted Kroger's argument that there was no conflict between Lively's religious practice and employment requirements because the schedule for the conference did not overlap at all with her assigned work shift. (*Id.* at PageID.1127.) But the report and recommendation did not rule definitively on whether a conflict existed. (*See id.*)

Lively makes one objection regarding her religious accommodation claim. (ECF No. 36, PageID.1151–1152.) Lively objects that the conference *did* conflict with her work schedule because her "religious responsibility extended after [the] time to clock in." (ECF No. 36, PageID.1151.) But Lively does not explain what this means. And Lively does not provide any evidence to show that a conflict existed between her religious beliefs and her employment obligations. In fact, the conference brochure shows the conference ended at 4:50 p.m. (ECF No. 26-13), and her posted work schedule for June 29 and June 30 shows that her shift started at 6:15

10

p.m. (ECF No. 26-14). On this undisputed record, no reasonable jury could find a conflict between Lively's sincere religious beliefs and the requirements of her employment.

Lively does not object to the Magistrate Judge's determinative finding that the SIR and probationary period did not rise to the level of "discharge or discipline" for failure to comply with a conflicting employment requirement. (*See* ECF No. 35, PageID.1129–1130; ECF No. 36.) (The Magistrate Judge did not reach the question of whether Kroger demonstrated undue hardship to accommodate Lively because she found that Lively did not satisfy her prima facie burden.) Having reviewed the Magistrate Judge's report and recommendation de novo, the Court finds no error and adopts it in full with respect to the religious accommodation claim.

### C. Retaliation

The Court will also adopt the recommendation that Kroger has met its burden to show Lively cannot prevail on a retaliation claim. Kroger is entitled to summary judgment on this claim.

Under both Title VII and ELCRA, to support a claim of retaliation without direct evidence, Lively must again establish a prima facie case for retaliation based on indirect evidence, and follow the traditional burden-shifting procedure. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019). To make her prima facie case, she must demonstrate: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known to the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and, (4) a causal connection existed between the protected activity and the materially adverse action. *See id.* (citations omitted). "Plaintiff's burden of establishing a materially adverse employment action is 'less onerous in the retaliation context than in the anti-discrimination context.'" *Azuh v. Providence-Providence Park Hosp.*, 380 F. Supp. 3d 665, 676 (E.D. Mich. 2019) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014)). A retaliation claim

11

must be proved "according to traditional principles of but-for causation," which require "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). As a result, "a defendant will be entitled to summary judgment so long as nondiscriminatory factors were sufficient to justify its ultimate decision." *Redlin*, 921 F.3d at 615 (cleaned up).

In this case, the Magistrate Judge found that while the assignment of less-desirable duties like cleaning and restocking met the lesser burden for a materially adverse action in a retaliation claim, the record did not show a causal connection between the alleged retaliation and a protected activity. (ECF No. 35, PageID.1133–1137.) Lively's objections again largely re-argue her motion for summary judgment, but the Court will address her argument that there was a causal connection between the protected activity and alleged retaliation.

Protected activity includes "not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted). In this case, Lively raised her concerns about religious discrimination in two ways. First, she complained to Myron Covington, her immediate supervisor, on June 26, 2018, when he stated a few days before the religious convention that no one would be permitted to take leave that weekend. (ECF No. 27, PageID.528, 537.) She showed him religious accommodation laws on her cell phone, including Title VII, but Covington stated that those laws did not apply to her. (ECF No. 27, PageID.537.) (It is not clear from the record why or how Covington reached this conclusion.) Second, Lively filed an EEOC charge with the Michigan Department of Civil Rights on August, 21, 2018, in which she alleged that Kroger discriminated against her for her religious practice by not allowing her to attend the conference, and that Kroger retaliated for her attendance

12

by issuing the SIRs and scrutinizing her adherence to the dress code, which she had not had problems with before. (ECF No. 26-17; *see also* ECF No. 26-3, PageID.367; ECF No. 27, PageID.528).

But neither of these facts can sustain Lively's retaliation claim. Regarding Covington, the Magistrate Judge correctly found that even assuming any conduct by Covington—such as reassignment of duties, or criticism of her job performance in front of other employees—was retaliatory and caused by Lively's complaint to him, Covington's conduct was not attributable to Kroger because a more senior manager restored Lively's duties when he learned of the changes. (ECF No. 26-3, PageID.379). Thus, Covington's allegedly retaliatory conduct cannot be imputed to Kroger. *See Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008) (for an employer to be liable for the retaliatory acts of a plaintiff's coworker, the employer must "have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances").

And the Magistrate Judge is also correct that Lively cannot maintain her claim based on retaliation for the EEOC charge because Lively bases her retaliation claim on Covington's conduct that occurred *before* she complained to the EEOC. As the Magistrate Judge explained: "The SIRs that Lively received for her absences and for failing to close out a customer's purchase cannot be considered retaliatory, as they occurred [in June and July 2018] before Lively's protected conduct, the filing of the EEOC Charge in August 2018." (ECF No. 35, PageID.1137.) The Magistrate Judge also correctly observed that "each SIR is supported by an intervening cause: unexcused absences and a customer's complaint." (ECF No. 35, PageID.1137). In retaliation cases, performance improvement plans and non-satisfactory work reviews "do not rise to the level of

13

a materially adverse action" if they have a "legitimate" motivation. *Choulagh v. Holder*, 528 F. App'x 432, 438 (6th Cir. 2013). For both of these reasons, Lively cannot demonstrate but-for causation for her retaliation claim based on the EEOC charge, and that claim therefore cannot pass summary judgment.

As a result, Kroger is entitled to summary judgment on the retaliation claim as well.

### D. Constructive Discharge

Finally, Lively objects that, contrary to the report and recommendation, she was constructively discharged from her employment on March 18, 2019 when she resigned from her position.

"To demonstrate a constructive discharge, the plaintiff must show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." *Hurtt v. Int'l Services, Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015) (citation omitted). The parties dispute only the first two prongs. Regarding the first prong, the Sixth Circuit has explained "whether a reasonable person would have felt compelled to resign depends on the facts of each case," but courts consider the following factors relevant, whether "singly or in combination": (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014).

The Magistrate Judge found that a reasonable person in Lively's position would not have felt compelled to resign because she was not demoted, did not suffer a reduction in wages or salary,

14

her extra cleaning and stocking tasks did not alter her job responsibilities, and her manager's treatment was not calculated to encourage her resignation. (ECF No. 35, PageID.1124.) And the Magistrate Judge found that Lively also did not satisfy the second prong for a constructive discharge claim: "Lively has not presented any evidence that this behavior was undertaken with the specific intention of forcing her to quit." (ECF No. 35, PageID.1154.)

Lively does not point to anything that would alter the conclusion that on this record, the conduct Lively experienced does not rise to the level of constructive discharge.

## V. Conclusion

Accordingly, the Court OVERRULES Lively's objections and ADOPTS the Magistrate Judge's report and recommendation (ECF No. 35).

The Court DISMISSES AS MOOT Kroger's initial motion for summary judgment. (ECF No. 25.)

The Court GRANTS Kroger's amended motion for summary judgment. (ECF No. 26.)

The Court DENIES Lively's motion for summary judgment. (ECF No. 27.)

SO ORDERED.

Dated: March 2, 2021  
 Detroit, Michigan

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2021

s/Karri Sandusky on behalf of  
Erica Karhoff, Case Manager